(97 App. Div. 120.)

### CAMARDELLA v. HOLMES et al.

(Supreme Court, Appellate Division, Second Department. July 28, 1904.)

1. BUILDING CONTRACTS—CONSTRUCTION.

Where a contract for the excavation and refilling of a sewer trench provided that plaintiff should furnish all "labor and tools" and excavate the trench to the depth required, and that defendants should furnish all "suitable and proper material," coal used to generate power in plaintiff's engine, used in the work of excavation, was within the term "labor and tools," rather than the term "materials," and hence plaintiff was liable to furnish the same.

2. SAME—PAROL EVIDENCE—INTENT.

Where, on an issue as to whether coal used in an engine in the work of digging a trench was labor and tools, within the contract, which were to be furnished by plaintiff, or materials, which were to be furnished by defendant, plaintiff was permitted to testify as to what he was directed to figure on, in determining the contract price, etc., he was not entitled to testify as to his undisclosed intention not to consider the cost of the coal in determining such price.

Appeal from Municipal Court, Borough of Brooklyn, Second District.

Action by James Camardella, doing business under the name of the Atlantic Construction Company, against James H. Holmes and another. From a Municipal Court judgment dismissing the complaint, plaintiff appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

Frederick W. Sparks, for appellant.
Charles I. McBurney, for respondents.

JENKS, J. The parties made a contract in writing whereby the plaintiff agreed, for the sum of $11.60 per lineal foot, "to excavate and to refill a trench for use in the construction of a sewer," and "to furnish all labor and tools, and excavate a trench to the depth required for a solid foundation, estimated," etc., and "to protect and erect within said trench all the required sheeting, bracing, bridging and foundation planking, and leave said sheeting within the trench." The defendants agreed to "furnish all suitable and proper material and deliver same, as required, along the line of work, to be used * * * in excavating and refilling a trench." The sole question presented is, which of the parties is to pay for the coal used to generate the power in the plaintiff's engine, used by him in the work of excavation. There is no provision in the agreement, other than those set forth, that has any bearing upon the subject, and hence the determination of the question depends upon a decision whether such coal is within the ex-

pression "labor and tools," which the plaintiff is to furnish, or within "proper and suitable material," which the defendants are to provide. As between the two, I am clear that the engine falls within the purview of labor and tools. The plaintiff was to do the work, but the instrumentalities thereof are not specified. The engine belongs to him, and is used by him in the work, which is labor. Power must be supplied to it, that it may do the work, and coal supplies this power. If the plaintiff furnished the man who dug with the spade, he would furnish labor. The principle is the same if he furnishes the power that works the engine. A tool is a mechanical implement—any implement used by a craftsman or laborer at his work. Cent. Dict. It is not required to give to the word a strict technical meaning in this instance. Coal is certainly not a material, within the meaning of the phrase in this agreement. Of course, it is material as distinguished of matter. It is physical, not spiritual. The material referred to in the agreement is that of which the "sheeting, bracing, bridging, foundation planking," and the like may be made. As between the two clauses, I have no hesitation in assigning coal to "labor and tools," rather than to the material.

The learned counsel for the appellant insists that he was entitled to offer parol evidence. The plaintiff was not permitted to state whether, in figuring on the price or in naming the price, he took expense of coal into consideration. But there is no reason why he should have testified to his mental processes. He was permitted to testify that·he asked one of the defendants, "What do you want me to figure on?" and that Mr. Holmes replied, "I only want you to figure on supplying the labor and tools, and we will supply all the materials along the job." It seems to me that the appellant obtained all that he was entitled to. When we examine this testimony, it is nothing more than a reiteration of the terms of the contract itself, and throws no light whatever upon the written words. It is not a question of what the plaintiff, apart, thought, or, apart, took or did not take into consideration, but what the parties agreed upon when their minds met in the contract.

There seems to have been a practical construction of the contract. The plaintiff testifies that subsequent to the signing of the contract he had no conversation in reference to the defendants paying for coal; that he did not bring up the question whether Mr. Holmes should pay him for the coal, but that, after the lapse of some months, he said to the defendant:

"'Mr. Holmes, under this contract, I do not see why I should pay for coal.' And Mr. Holmes replied: 'Well, I don't know. I should think you ought to.' I said: 'I don't know, you see, how I am getting out of the contract, and therefore I think I ought not to pay for coal.'"

The plaintiff had bought and paid for the coal without question or demur for some months, and it would seem that his protest was due to the discovery that the contract was not as profitable as he had expected.

I think that the judgment should be affirmed, with costs. All concur.