JOHN C. MEYERS, Appellant, v, RUDOLPH F. KILGEN, Respondent.

St. Louis Court of Appeals,  Argued and Submitted October 7, 1913. Opinion Filed November 4, 1913.

1. REAL ESTATE BROKERS:  Right to Commission:  Question for Jury.  Plaintiff entered into a contract with a realty company for the purchase of land belonging to it.  Subsequently, defendant, who was president of the realty company and also president of another company which acted as agent for the realty company in the transaction, agreed with plaintiff that, after a certain amount had been paid by plaintiff on the purchase price, he would pay plaintiff a stipulated commission. Plaintiff purchased the land and paid more than the required amount on the purchase price, and then brought suit for the agreed commission.  *Held*, under the evidence, that whether plaintiff substantially performed the contract, so as to entitle him to a commission, was a question for the jury.  *Held, further*, that whether defendant, in making the contract with plaintiff, acted for himself, or for the realty company, or for the other company, was a question for the jury, under the evidence.

2. ———: ———: Substantial Compliance with Contract.  Substantial compliance with a contract relating to the sale of realty is all that is required to entitle the broker to a commission, and whether there has been substantial compliance is usually a question for the jury.

3. PRINCIPAL AND AGENT: Contract of Agent: Person Bound. It is not necesary, in order to bind the principal by a contract, that the contract be executed in his name and by his act, but it is sufficient if, from the terms of the contract, it can be gathered that he who makes it describes himself, and acts, as agent and intends to bind his principal and not himself.

Meyers v. Kilgen.

4. ——: ——: ——. When a person acts and contracts as the agent of another, who is known as the principal, such acts and agreements, within the scope of his authority, are considered the acts and contracts of his principal, and involve no personal liability.

5. ——: ——: ——. A person contracting as agent is personally liable, whether he is known to be an agent or not, where he makes the contract in his own name, or voluntarily incurs a personal responsibility, either express or implied; but whether he is personally liable, or his principal only, or both, is generally a question for the jury.

6. ——: ——: ——: **Parol Evidence.** Parol evidence is admissible to show that a written contract made in the name of an agent was in fact made for an undisclosed or unnamed principal.

7. **APPELLATE PRACTICE: Refusal to Reopen Case: Review.** The trial judge's discretion in determining whether to reopen a case, after the conclusion of the evidence, and admit additional evidence, is subject to review, on appeal.

8. **TRIAL PRACTICE: Reopening Case.** In an action on a contract, in which it was a material issue as to whether defendant had bound himself personally, or as agent for another, *held* that the trial court abused its discretion in refusing to allow plaintiff, after having closed his case, to reopen the case and introduce additional evidence to show that defendant intended, by the contract, to bind himself personally.

Appeal from St. Louis City Circuit Court.—*Hon. William M. Kinsey,* Judge.

REVERSED AND REMANDED.

*Russell I. Tolson* for appellant.

*Davis Biggs* and *Theo. R. Bland* for respondent.

(1) (a) The agreement of November 2, 1907, Exhibit A, was an option agreement and having expired on December 10, 1907, any extension thereof must have a new consideration to support it. The evidence discloses none. 21 Am. & Eng. Ency. of Law, 926; Ide v. Leisler, 10 Mont. 5; 24 Am. St. Rep., 17; Clarno v. Grayson, 30 Oregon 11. (b) Nor is this rule

changed by the fact that the money paid for such option is to be applied as part payment. 21 Am. & Eng. Ency. of Law, 926; Ide v. Leisler, *supra.* (c) The $1000 earnest money deposited on said agreement was, therefore, by its terms, forfeited on December 10, 1907. (2) (a) The deal as closed in May, 1908, was, therefore, not the same in substance as the one provided for in Exhibit A, the agreement of November 2, 1907: 1. Because the total selling price was $1000 less; 2. Because the times of payment were different; 3. Because the provisions for interest were different. (b) And a change in the time of payment, even though slight, is a material variance. Howard v. Triplett, 34 Mo. App. Young v. Ruhwedel, 119 Mo. App. 244. (3) A party cannot sue on one contract and recover on another or on a modified contract or on a waiver of the provisions of the contract sued on or on a *quantum meruit* for services rendered. Koons v. Car Co., 203 Mo. 245; Taussig v. Mill & Land Co., 124 Mo. App. 220; Warren v. Cram, 71 Mo. App. 641; Harkness v. Russell, 47 Mo. App. 202; Blackwell v. Adams, 28 Mo. App. 61. (4) Neither can it be said that the sale as made was accepted as a fulfillment of the original contract. Reiber v. Bigger, 29 Mo. App. 430; Ramsey v. West, 31 Mo. App. 685. (5) It was known to plaintiff that Kilgen was only acting as president of the McCormick-Kilgen-Rule Real Estate Company. He signed the agreement; then extended it in his individual name; and signed the agreement for commission in the same way. And where an agent makes known to the other party the name of his principal and the subject-matter and extent of his authority the law presumes that the parties intended to bind the principal, and not the agent. The record discloses no evidence whatever to overcome that presumption. Gierloff v. Carleton, 121 N. Y. S. 338; Kyle v. Horbert, 122 N. Y. S. 204; Banks v. Hutton, 224 Mo. 42; Frambach v. Frank, 81 Pac. 247.

STATEMENT.—This action was commenced before a justice of the peace to recover $500 alleged to be due plaintiff by defendant as a commission for selling and negotiating the sale of certain real estate in the city of St. Louis. Plaintiff recovering before the justice, defendant appealed to the circuit court. At the trial there before the court and a jury, plaintiff introduced testimony substantially as follows:

On the second of November an agreement was entered into between plaintiff and the Rollice Realty Company, the agreement being signed in the name of this Realty Company by McCormick-Kilgen-Rule Real Estate Company, as agent, by R. F. Kilgen, president, and was also signed by plaintiff. In this agreement it is set out that plaintiff, on November 2, 1907, had paid $1000 ''earnest money and part purchase money for a certain improved piece of property, lying in the city of St. Louis,'' describing it. The agreement proceeding: ''which property is known as the Ice Rink, and is this day sold to said John C. Meyers for the sum of $25,000, payable as follows: The above $1000 cash; $2000, January 1, 1908; $2000, July 1, 1908; $3000, September 1, 1908; $12,000, in five years, and $5000, in three years, all notes to be secured by deed of trust on the said premises with six per cent interest, except the $12,000 five-year note, which is to be five per cent interest. The title of the said property is to be perfect and to be conveyed by a warranty deed, free from all incumbrance excepting taxes for the year 1908 and thereafter. Said deed and conveyance to be made on the payment of an aggregate sum of $5000, on the payment of which sum the above deed of conveyance is to be delivered to the purchaser. A contract of the above terms of stipulation shall be entered into within thirty days from date; failing to do so the above earnest money shall be forfeited, but such forfeiture shall not release said purchaser herein from any liability for the fulfillment of this contract of sale or the payment of

money herein mentioned.'' Indorsed on this agreement is this: ''This agreement extended to December 10, 1907. R. F. Kilgen.''

It appears that after this agreement was entered into plaintiff, according to his testimony, had a contract with Mr. Kilgen for payment to him of a commission if the sale went through, a memorandum of which was reduced to writing and introduced in evidence and is as follows:

''Nov. 2, '07.

John C. Meyers:

After $5000 been paid will allow or pay you $500 commission.

R. F. Kilgen.''

Plaintiff testified that this referred to the above agreement and that after that agreement had been made, which is designated as Exhibit ''A,'' the memorandum signed by Kilgen being marked as Exhibit ''B,'' he took possession of the building, organized the company and paid Kilgen the consideration, giving him a note for $25,000; bought the building and carried out the conditions of the agreement. He further testified that when this memorandum about the payment of the $500 commission was made the $5000 there mentioned referred to the first payment on the mortgage notes to be given on that building; that the terms in Exhibit ''B'' referred to the understanding in Exhibit ''A.'' Plaintiff then introduced in evidence a warranty deed from the Rollice Realty Company to himself. It is in the usual form of a warranty deed, dated May 15, 1908, made by the Rollice Realty Company, through its president, Kilgen, the defendant, party of the first part, to John C. Meyers, the plaintiff, as party of the second part; acknowledges the payment of ten dollars by the party of the second part to the party of the first part for the lot described in the agreement, Exhibit ''A,'' and states that the warranty is subject to a deed of trust thereon for $10,000, dated February 20, 1908.

Plaintiff then introduced a deed of trust which was in the usual form, dated May 15, 1908, and is between him as party of the first part, R. F. Kilgen, as party of the second part, and the Rollice Realty Company, as party of the third part; acknowledges the payment of one dollar by the party of the second part to the party of the first part for the property before described, subject to the deed of trust mentioned in the warranty deed referred to, a deed of trust being executed for part payment of the purchase money on the property by Meyers in the sum of $14,000, in evidence of which it is set out that Meyers had executed to the party of the third part eight promissory notes of even date, to-wit, two notes for $1000 each, six notes for $2000 each. It was admitted that the $5000 mentioned in the deed of trust had been paid to and received by the Rollice Realty Company on account of payments provided for by the deed of trust, that is to say the notes as they came due were taken up and that that was done prior to the institution of the suit.

Plaintiff was then asked to state what, if any, conversation he had with Mr. Kilgen with regard to carrying out the contract after he entered into the agreement evidenced by Exhibit ''A.'' The witness testified that after December 10, 1907, he got the keys to the property, organized a company, went ahead with the proposition, finally bought the property himself and then sold it to the company he had organized. Asked if he had had any conversation with Mr. Kilgen after the extension to December 10, 1907, had been made, he stated that he had conversations at various times with Mr. Kilgen in his office; that these conversations were after the notation on the agreement of its extension to December 10th. In these conversations Mr. Kilgen had simply told plaintiff to go ahead with the deal, to ''go ahead with the business; organize your company, and I am with you.'' The other conversations plaintiff stated related to the changes in the build-

ing. Plaintiff had the keys. Kilgen saw the changes he made, by which he had converted the building from an ice rink into a natatorium. Plaintiff testified that he and Kilgen spoke of the details of the contract and that Kilgen had said, "go ahead with the business."

Plaintiff organized a company to take over the property about the 10th of January, 1908, and he conveyed the property to this corporation. These transactions were evidenced by the deeds above recited. Plaintiff being asked to state whether he and Kilgen had had any conversations in regard to the variance of the contract or a possible change in it, he answered that they had and that they had had several conversations and they amounted simply to this: "That times were hard, and the money question was coming up, and I should continue and go on, and there would not be any change in the contract at all—to go ahead with the deal. Kilgen said, 'You have gone so far, and I will not have you lose that $1000 earnest money; but let us get rid of the property; do with it what you please.'" Plaintiff repeated that he was in possession of the property and had taken possession of it immediately after entering into the first contract, Exhibit "A," which was some time in November, 1907.

On cross-examination the witness stated that he knew that the property concerned belonged to Mr. Kilgen, or that Mr. Kilgen and his company had charge of it; that Mr. Kilgen handled it entirely, no one in the office knowing anything about it except him, and that his entire dealings were with Mr. Kilgen; did not know whether Kilgen was president of the Rollice Company; knew that Kilgen's firm were agents or represented the property; knew at the time that the contract, Exhibit "A," was signed on November 2, 1907; that it was signed, "Rollice Realty Company, by McCormick, Kilgen Rule Real Estate Company, Agents, by R. F. Kilgen, President;" knew it was so signed but paid no special attention to it; took the contract but what re-

lation Mr. Kilgen had regarding these other people did not enter his mind; did not know that the Rollice Realty Company owned the property; did not know there was such a company in existence; his dealings. were with Mr. Kilgen.

Plaintiff's attention called to the fact that on the face of the paper it recites that the Rollice Realty Company "undertakes" to sell it to him, witness replied: "It recites it that way; at that time I did not know that there was any such thing as the Rollice Realty Company. My dealings were with Mr. Kilgen." Plaintiff testified that he knew that the contract was for the purchase of a piece of property owned by the Rollice Realty Company and that McCormick, Kilgen & Rule Real Estate Company were the agents for that company but he did not know the Rollice Realty Company; all he knew about it was that Mr. Kilgen had signed the contract in the way it appeared and that he had accepted it because he accepted Mr. Kilgen's word for anything he did. Asked if the conversations he had testified to were the only ones he had had with Mr. Kilgen, he stated that he had had a number of them. Asked to tell the substance of them, he stated they had met hundreds of times regarding the property but he did not recollect the conversations as they had occurred three years before; had met Mr. Kilgen in the office of his firm or company; his idea was to buy the property, organize a corporation and turn it over to the corporation and that was what he finally did at the suggestion of Mr. Kilgen, who wanted to get rid of the property which had been a dead piece of property for him, and he acted on the suggestion of plaintiff and said to plaintiff, "Go ahead, Meyers, get busy, and I will give you $500."

Plaintiff further states, in continuation of his cross-examination, that after he entered into the contract and took charge of the rink or natatorium, he had paid "$3000, he thought;" whereupon counsel for de-

fendant interposed that it was agreed that $5000 had been paid. In answer to a question of the court, plaintiff testified that Mr. Kilgen acted as president of the Rollice Realty Company in executing the deed. On the day the warranty deed was given and the deed of trust made, he had no conversation with Mr. Kilgen with reference to this contract.

This is substantially the whole of plaintiff's testimony and plaintiff rested. Whereupon defendant submitted to the court an instruction that under the pleadings and evidence the verdict should be for defendant. The court refused to give this. Counsel for defendant thereupon stated that there was no testimony to be offered by defendant. Counsel for plaintiff thereupon stated that he would like to ask that plaintiff be permitted to introduce evidence on the point of the understanding between Mr. Kilgen and himself as to who was to be bound by that agreement, to which the court said: "That was part of your case; the whole case is closed now." Counsel for plaintiff then asked that plaintiff be permitted to reopen his case and introduce evidence to show that Mr. Kilgen intended to bind himself and no one else, to which the court answered, "You have closed your case and the defendant has closed his case." To this counsel for plaintiff said, "But the plaintiff has asked—" To which the court said: "The defendant stands on the testimony. The question now is whether you are entitled to go to the jury or not." This ruling of the court was duly excepted to by plaintiff's counsel, who thereupon asked the court to instruct the jury. First, that under the law and the evidence the verdict must be for plaintiff. Second, that if the jury believed from the evidence that the contract marked Exhibit "A" had been substantially complied with, and if the jury further believed that the defendant intended to bind himself personally in the contract marked Exhibit "B," the verdict must be for plaintiff. The court re-

fused both these instructions, plaintiff excepting. The court thereupon instructed the jury that under the pleadings and the evidence their verdict must be for defendant. Plaintiff duly excepted to the giving of this instruction and a verdict being rendered in accordance with the direction of the court and judgment following, plaintiff in due time filed his motion for new trial and on that being overruled and saving exception duly perfected appeal tc this court.

REYNOLDS, P. J. (after stating the facts).—We are compelled to reverse the judgment in this case for two reasons. In the first place, it was error to refuse the second instruction asked by plaintiff. It was a question of fact to be submitted to the jury under the evidence in the case, as to whether there had been a substantial compliance by plaintiff with the terms of the contract between him and the Rollice Realty Company, and it was a question of fact to be determined by the jury as to whether in entering into the contract for the payment of the commission of $500, the defendant Kilgen had been acting for himself or as agent for his company, or for the Rollice Realty Company. It needs no citation of authority to establish the proposition that substantial compliance with the terms of the contract is all that is required to entitle the agent to his commission and whether there has been a substantial compliance with the contract is usually, and in this case was, one for the determination of the jury. There was evidence tending to show that the original contract had been substantially complied with. That contract, by its terms, was to expire at a day named, but there was evidence tending to show that it had been extended indefinitely and that the plaintiff was not only permitted but encouraged by Mr. Kilgen, representing the sellers and owners of the property to go on and endeavor to complete it. When the sale was effected, instead of the consideration of $25,000, the original price,

being called for as the sum to be paid, it was stated at
$24,000, which is at least persuasive, if not conclusive,
evidence that there had been no forfeiture of the $1000,
as provided for in the original contract but that plain-
tiff had been given the benefit of that payment when
the deal was consummated. So plaintiff testified, in ef-
fect.

The learned counsel for respondent invokes and
quotes extensively from Blackwell v. Adams, 28 Mo.
App. 61, and from Reiger v. Bigger, 29 Mo. App. 421,
l. c. 430, 431, as also from Ray County Savings Bank v.
Hutton, 224 Mo. 42, 123 S. W. 47, in support of their
propositions for affirmance. We do not think there is
anything in these cases which meets the facts or which
presents the law applicable to this case. Indeed, as
we read them, they are against respondent on prin-
ciple. Those counsel have referred to text-writers and
other authorities in support of the proposition that it
is not indispensable in order to bind the principal that
the contract should be executed in the name and by
the act of the principal; that it will be sufficient if upon
the whole instrument it can be gathered from the terms
thereof that the party describes himself and acts as
agent and intends thereby to bind the principal and not
to bind himself. That is true. It is also undoubted
law, as stated by those counsel, that in general when a
person acts and contracts as the agent of another, who
is known as the principal, his acts and contracts within
the scope of his authority are considered the acts and
contracts of the principal and involve no personal lia-
bility. But the question as to in what capacity he
signed and contracted, where, as in this case, he signs
in his individual name, was a question of fact to be
submitted to the jury. So run the authorities.

Judge Story states the general rule thus: "In the
next place, a person contracting as agent will be per-
sonally liable, whether he is known to be an agent or
not, in all cases where he makes the contract in his own

name, or voluntarily incurs a personal responsibility, either express or implied." [Story, Agency (9 Ed.), sec. 269.] Whether, however, he is liable, or the principal only, or both, is, generally, a matter of fact, to be left to the jury.

While the interpretation of the contract is of course for the court, it is for the jury to determine who made the contract and to whom the credit was given. [Story, Agency, secs. 288, 289, 290.]

An accepted authority states it as "now settled law that the admission of parol evidence to show that a written contract made in the name of the agent was in fact made in behalf of an undisclosed, or if disclosed, unnamed principal, does not violate the rule against the admission of parol evidence to vary the terms of a written contract." [Huffcut on Agency (2 Ed.), sec. 123.]

The same author (section 186) says: "An agent may deal so as to bind himself personally, although disclosing his principal; it is always a question of the intention and understanding of the parties."

As there was testimony given in the case by the plaintiff, that he had made the contract as to his commission with Mr. Kilgen individually and not as representing his company, and looked to Mr. Kilgen alone for payment, it was for the jury to determine whether this was true. In short it was a question of fact for their determination under the evidence.

In the second place, we must reverse on account of the action of the learned trial court in refusing leave to plaintiff to reopen the case. While reopening a case after the conclusion of testimony is largely a matter in the discretion of the trial judge, that discretion is subject to our review. We are compelled to say that in the case before us it was harshly used. If plaintiff had further testimony to offer in line with what undoubtedly was disclosed to be material at the argument on the demurrer, and which demurrer was overruled by

the court when first interposed by counsel for the defendant, to make clear the capacity in which he and defendant had contracted, it surely was in the line of justice and of its due administration to allow him to do so.

For these reasons we are compelled to reverse the judgment of the circuit court and to remand the cause for further proceedings. *Nortoni* and *Allen, JJ.*, concur.