SETH SERAT, Appellant, v. R. L. WINTER, Respondent.*

Kansas City Court of Appeals. May 5, 1924.

1. **CORPORATIONS: Principal and Agent: Evidence of Incorporation of Company and Authority of Defendant to Act as Its Trustee or Agent Held Properly Admitted.** Where plaintiff in writing offered to furnish coal for named corporations which offer was accepted by W., trustee, and in a suit for the price, the contract being pleaded in full, the defense was made that W. was not personally liable, *held* there was no error in admitting evidence of the incorporation of named company and the authority of W. to act as its trustee or agent.

2. **SALES: Contracts: Burden on Seller to Show That Contract Signed and Accepted by Defendant, Trustee, Bound Him Personally.** Where offer to furnish coal for named corporations was written and prepared by seller's agent and accepted by W., trustee, the burden was on seller to show that the contract bound W. personally.

3. **EVIDENCE: Presumptions: Unexplained Failure to Produce Corporation Records, Raises Presumption That Such Evidence, if Produced, Would be Prejudicial to Defendant.** Where the absence of, or failure of defendant to produce minute books of corporations, in his possession, showing his authority to act as trustee therefor in purchase of coal, is unexplained, a strong presumption arises that such evidence, if produced, would operate to his prejudice.

4. ————: **Where Careful Search Failed to Find Records of Corporation Their Absence Cannot be Said to be Unexplained.** Where defend-

Serat v. Winter.

ant testified he made careful search for books and failed to find them, it cannot be said that their absence was unexplained.

5. **INSTRUCTIONS: Declaration of Law That Credit Was Extended to Defendant Individually Held Properly Refused.** Where written offer to furnish coal to named corporation was accepted by W., trustee, in a suit against W., individually, for the price of coal delivered to corporations, *held* there was no evidence in refusing seller's declaration of law that it extended credit to W. individually.

6. **PRINCIPAL AND AGENT: One Contracting with Another for a Third Person, Making Fact Known, Does Not Create Personal Liability Against Himself.** If one contracts with another for a third person, making the fact known to the other, he does not create a personal liability against himself.

7. ———: **One, in Acting for Several Persons, May Contract as Agent for Some of Them and as Principal for Himself.** Where one is acting for several persons he may contract as agent for some of them and as principal for himself.

---

*Headnotes 1. Corporations, 14a C. J., Section 2978; 2. Sales, 35 Cyc., p. 83; 3. Evidence, 22 C. J., Section 54; 4. Evidence, 22 C. J., Section 54; 5. Sales, 35 Cyc., p. 86; 6. Agency, 2 C. J., Section 486; 7. Agency, 2 C. J., Section 488.

Appeal from the Circuit Court of Jackson County.—*Hon. Willard P. Hall*, Judge.

AFFIRMED.

*A. F. Evans* for appellant.

*Ball & Ryland* for respondent.

ARNOLD, J.—This is an action for the recovery of the price of 220.95 tons of coal alleged to have been sold and delivered under the terms of the following written contract:

"STAR COAL CO.
"Miner and Shipper.
"Third floor,      Commerce Building.
"Kansas City, Mo., Sept. 23, 1916.

"E. R. Dusky,
   "General Sales Agt.
"Mr. R. L. Winter, Trustee,
   "Kansas City, Missouri
"Dear Sir:
      "We hereby agree to furnish your entire requirements for the Maryland Zinc Company and the Spring River Mine, of the kind and grade of coal herein mentioned, for one (1) year from September 23, 1916, at the following prices per ton of Two Thousand (2000) pounds FOB mines:
   "Southern Kansas District Shaker Screened
      Lump ................................ $2.25
   "Southern Kansas District Mine Run ..... $2.00
      "Railroad or mine weights in all cases to govern settlements. Payments to be made on or before the Tenth (10th) day of each month for all coal shipped during the preceding month.
      "You to take your entire supply of coal from us, and we to fill your orders promptly at all times, except in cases of strikes of mines, contingencies of transportation, or other unavoidable delays.
      "The acceptance of this proposition in writing will be considered a contract, and binding on both parties.
                     "Yours very truly,
                     "STAR COAL COMPANY,
                            "By E. R. DUSKY,
                            "General Sales Agent.
"ACCEPTED:
   "R. L. WINTER,
         Trustee."
   The petition alleges that plaintiff was, and is now, engaged in business at Kansas City, Mo., under the name of the Star Coal Company, and that, as such, he entered into the contract above referred to, whereby he became obliged to furnish defendant all the coal described in said contract, under the conditions therein specified; that defendant became obligated to pay for the coal so furnished in accordance with the terms thereof; that un-

der and pursuant to said contract plaintiff furnished six cars of coal, totaling 220.95 tons, from March 21, 1917, to April 17, 1917, inclusive, and that thereby defendant became, and still is, indebted to plaintiff in the sum of $441.90. Judgment is prayed for said amount with interest from May 10, 1917. A demurrer to the petition was filed and by the court overruled.

The answer admits that plaintiff was engaged in business at Kansas City, Mo., under the name of the Star Coal Company and that the contract set out in the petition is a correct copy of the instrument, which was signed by defendant on or about September 23, 1916, and denies each and every other allegation contained in the petition.

Further answering, defendant charges that at the time of the signing of said instrument, defendant was an officer and agent of a corporation known as the Spring River Mines Co., engaged in mining and milling lead and zinc ore, at or near Stott City, Mo.; that defendant signed the said instrument as the authorized officer and representative of said corporation, and that the same was signed for, and on behalf of, said company and not for or on behalf of defendant, and that plaintiff well knew this; that there was no intention on the part of plaintiff or defendant, at the time of signing the instrument, that the sale or purchase of said coal was for defendant personally. It is denied that any coal was delivered to defendant under said agreement, and it is declared that long prior to the delivery of said coal defendant ceased to be an officer, agent, or representative of said corporation; that none of the six several deliveries alleged in the petition was made to defendant; that whatever coal was delivered, pursuant to said instrument, was furnished, billed and shipped by plaintiff to said corporation, and defendant denies any promise to pay for said coal personally.

The reply is a general denial and especially denies knowledge that defendant signed said instrument in any capacity other than personally; that defendant did not

disclose, but on the contrary, concealed the fact that he was signing said instrument in any other than his personal capacity; that in the sale and delivery of said coal, personal credit therefor was extended to defendant and not to said company.

A jury was waived and the cause was tried to the court. Judgment was duly entered for defendant. After unsuccessful motions for a new trial and in arrest, plaintiff appeals.

It is first charged that the court erred in admitting parol evidence to explain, change, or modify the terms or legal effect of the written agreement sued on, over the objections of plaintiff. In the discussion of this point, it is well to remember that the testimony shows that the orders upon which all the cars of coal were delivered, as scheduled in the petition, were given by one C. F. Young, secretary of the Spring River Mines Company, successor to defendant. However, we do not hold that this fact is determinative of the issue as to whether or not defendant became personally obligated under the terms of the contract; but if it shall be found hereafter that defendant did not personally so obligate himself, the point goes directly to the merits of the controversy.

In support of his charge of error, as above specified, plaintiff urges that the contract is not ambiguous, and that parol evidence to explain it was, therefore, not admissible. Reference to the contract in question shows that it is addressed to "Mr. R. L. Winter, Trustee," and that it is marked "Accepted: R. L. Winter, Trustee." From the arguments of parties, it reasonably may be concluded that whether or not the contract, in fact, is ambiguous, is the first issue before us, and that this question involves the word "trustee" as used in the contract. It is insisted by plaintiff that the word "trustee" is merely descriptive and that its use in the communication does not relieve defendant from personal liability under its terms.

The testimony shows that the Maryland Zinc Company was organized and engaged in the tailing business,

i. e., re-running the tailings of a zinc mine. This company quit business in the spring or summer of 1916. The Spring River Mines Company took over the mill of the Maryland Zinc Company, paying in part only for the mill which afterwards reverted to the Zinc Company. The mining company closed down about May 1-15, 1917. Prior thereto, there was an agreement, or understanding between the directors or stockholders of the two companies, making defendant trustee for the purpose of handling the Mines Company under a contract of sale entered into between the two companies, on September 1, 1916. Defendant was the secretary and a stockholder in both companies but his connection with the Mines Company, as secretary, ceased about January 1, 1917, when he was succeeded by C. P. Young.

The latter which forms the basis of this suit was composed and written by one E. R. Dusky, general sales agent of plaintiff. Dusky was acting on behalf of plaintiff, and knew the addressee of said letter was "trustee" of something, no doubt. The word "trustee" is one of definite and certain meaning and carries with it something more than a mere descriptive element. The communication itself gives us some light on this point, wherein it says: "We hereby agree to furnish your entire requirements for the Maryland Zinc Co., and the Spring River Mine, of kind and grade of coal herein mentioned."

It is urged by plaintiff that evidence of the incorporation of the Maryland Zinc Company and the authority of defendant to act as trustee or agent of said company was erroneously admitted. The petition sets out the contract in full, wherein it is proposed to sell "for the Maryland Zinc Co. and the Spring River Mines Co." The two companies being named in the proposal, it cannot be said that the Maryland Zinc Company is not named in the pleadings. The issue made by the answer is that defendant is not personally liable under the contract. The evidence was properly admitted.

Further it is insisted that defendant is personally liable for the reason that he did not, by the terms of

the contract, bind either the Mining Company or the Zinc Company to purchase or pay for the coal. The testimony tends to show that the proposition, or contract, was written by plaintiff's agent and there is no evidence that defendant directed the wording of it. It is said in 9 Corpus Juris, 707:

"Where the contract is prepared by one of the parties thereto, doubtful expressions will be construed against the party who prepared the contract and used the language." [Camardella v. Holmes, 97 App. Div. 120, 89 N. Y. S. 616; Sanbrook v. Morrison Inv. Co., 239 S. W. 543.] We must hold that the burden is on plaintiff to show that the contract binds defendant personally.

Plaintiff charges that the failure of defendant to produce the minute books of the two companies which were traced to his possession, and evidence relating to his authority (if any he had), and the extent of his authority to act as trustee, raises a strong presumption that such evidence, if produced, would operate to his prejudice. This correctly states the rule where the absence of records is unexplained, but as we read the testimony herein, defendant testified that he made a careful search for the books and failed to find them. We cannot say, therefore, that the failure to produce them is unexplained. There was testimony of other witnesses tending to support defendant in his statement of what the records were on this point. We rule against plaintiff in this contention.

Finally plaintiff charges the court erred in refusing his declaration of law No. 2, which embodies plaintiff's theory that, as a matter of law, plaintiff extended credit to defendant individually; and also charges error in the refusal of the court to give plaintiff's declaration of law No. 1, which was, in fact, a peremptory instruction to find for plaintiff. Under the law, as applied to the facts in evidence, we hold there was no error in this behalf.

It was held, in effect, in Eckel v. Gruebel, 226 S. W. 983, that if one contracts with another for a third person, making the fact known to the other, he does not

create a personal liability against himself.    This rule follows a long line of decisions in this State.    [Anderson & Co. v. Stapel, 80 Mo. App. 115; Hartzell v. Crumb, 90 Mo. 629, 3 S. W. 59; Huston v. Tyler, 140 Mo. 252, 36 S. W. 654, 41 S. W. 795; Meyers v. Kilgen, 177 Mo. App. 724, 160 S. W. 569; Ray County Savings Bank v. Hutton, 224 Mo. 42, 123 S. W. 47.]

It is also the rule that where one is acting for several persons he may contract as agent for some of them and as principal for himself.    But that is not this case.    The fact that defendant was an officer and stockholder of the companies mentioned in the proposal would not bring him within the purview of this rule.    Under the facts presented by the record, we are unable to say that defendant bound himself personally under a fair construction of the contract, and we so hold.    Since the appeal hinges upon the determination of this question, other points raised need not be discussed.

The judgment is affirmed.    All concur.

## ON REHEARING.

ARNOLD, J.—Again we have carefully examined the original briefs as well as the briefs of plaintiff on rehearing.    The additional citations also have been considered.    No points are found presented at this time which were not fully considered and properly determined in the original opinion on appeal.    We therefore adhere to our former opinion which is hereto attached.

All concur.