**Handy MOORE, Plaintiff-Respondent,**

v.

**L.R. SEABAUGH and Norman Weiss, Defendants-Appellants.**

No. 47857.

Missouri Court of Appeals,
Eastern District,
Southern Division.

Dec. 4, 1984.

Motion for Rehearing and/or
Transfer to Supreme Court Denied
Jan. 9, 1985.

J. Michael Payne, Cape Girardeau, for defendants-appellants.

Manuel Drumm, Sikeston, for plaintiff-respondent.

GAERTNER, Judge.

Appellants Dr. L.R. Seabaugh and Norman Weiss appeal from the trial court judgment against them in a bench-tried case on an action for breach of contract. We affirm.

Appellants list four points on appeal. First, they argue that they are not personally liable on the contract sued upon because they were merely agents for disclosed principals. Second, appellants contend that even if they are personally liable, their liability is not joint and several with the liability of the alleged disclosed principals because the signators' duties under the contract were different. Third, they maintain the contract sued upon fails for lack of consideration. Fourth, they claim that the lawsuit should have been stayed because of bankruptcy proceedings of the alleged disclosed principals.

Appellants entered into a management contract with Pioneer Orchards Co. and its president, Stanley Beggs, on May 19, 1980, where appellants agreed to aid in the management and control of the corporation's financial affairs. Several months later, on September 1, 1980, respondent Handy Moore, an orchard owner, entered in to a marketing contract with Pioneer Orchards Co., Beggs, and both appellants for the processing, packaging and sale of his apples. Less than one year later, respondent sued Pioneer Orchards Co., Beggs, and appellants for breach of the marketing contract. The trial court found against appellants and in favor of respondent on two of the three counts in his petition. Subsequently, Pioneer Orchards Co., and Beggs, who had filed bankruptcy petitions, were dismissed.

The point raised by appellants is that the trial court erred in holding them personally liable for breach of the marketing contract because appellants were merely agents of disclosed principals, namely, Pioneer Orchards Co. and Stanley Beggs. Respondent knew that appellants had signed the management contract with Pioneer Orchards Co. and Beggs, and that the management contract required appellants' written approval of any financial transaction undertaken by Pioneer Orchards Co.

■ Respondent was thus aware that appellants were acting as agents for Pioneer Orchards Co. and Beggs. The general rule is that where a third party and an agent for a disclosed principal make a contract, the agent is not personally liable to the third party for a breach of the contract. *Grether v. DiFranco*, 178 S.W.2d 469, 473[5–7] (Mo.App.1944).

■ The ordinary rule of liability for the agent of a disclosed principal may give way, however, if the parties to the contract agree upon the personal liability of the agent. *Morrison v. Painter*, 170 S.W.2d 965, 971[18, 19] (Mo.App.1943); *Bridges v. Rice*, 99 S.W.2d 531, 534[1–4] (Mo.App. 1936).

■ The trial court could infer that appellants agreed to be personally liable on the marketing contract because they each signed the contract as individuals with no limitation that they were signing only in their capacities as agents. An agent incurs personal liability, regardless of disclosure of the principal, where the agent contracts in his own name, rather than on behalf of his principal. *Meyers v. Kilgen*, 177 Mo. App. 724, 160 S.W. 569, 573[6] (1913). *Wired Music, Inc. v. Great River Steamboat Co.*, 554 S.W.2d 466 (Mo.App.1977), cited by appellants, is distinguishable because there the individual signed the agreement as president of and for the corporation and was thus not personally liable on the contract.

In addition to appellants' signatures without limitation, the contract contained a clause which defined the "Second Party" as including not only Pioneer Orchards Co. and Beggs, but also appellants. Nowhere in the contract are appellants' obligations differentiated from Pioneer Orchards Co.'s

and Beggs' duties. The contract continuously speaks of the rights and duties of the "First Party," i.e., respondent, and "Second Party."

 Where an individual signs an agreement on behalf of a disclosed principal and the capacity in which the individual signs is evident, he will not be personally liable on the instrument absent clear and explicit evidence of an intention to be bound. *Wired Music, Inc. v. Great River Steamboat, supra,* at 468[3, 5]; *Bridges v. Rice, supra.* On the other hand, where the individual signs the agreement without indicating that this signature is only given as an agent, the question of his personal liability is one for the trier of fact. *Meyers v. Kilgen, supra.* Appellants signed the marketing contract as individuals and allowed themselves to be included as parties to the contract with their principal. That appellants, under these circumstances, could create a presumption of their nonliability merely by a disclosure of their agency is an unsupported proposition. Indeed, it seems the better rule is that upon proof that an agent signed his signature without limitations, to an instrument and with no limitations stated in the body of the instrument, the other party to the agreement has made a prima facie case for the agent's personal liability, and the agent bears the burden of proving both disclosure of the principal and the intention of the parties not to impose personal liability on the agent. Under the standard of review in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976), we cannot hold the trial court erred in finding appellants personally liable.

 Appellants next contend that even if they were personally liable on the contract, they were not joint and several obligors with Pioneer Orchards Co. and Beggs. The point has no merit.

Appellants disparage the conclusion that they intended to be individually bound on the marketing contract, reasoning that for them to have assumed such potentially great liability absent any personal gain to themselves defies common sense. We disagree. Appellants, who were to receive a small percentage of the corporation's gross income under the management contract, are jointly and severally liable under the marketing contract to respondent. "Under the common law, where two or more persons undertake the performance of the obligation, the presumption is that the undertaking was joint." *Don L. Tullis & Associates, Inc. v. Gover,* 577 S.W.2d 891, 900 (Mo.App.1979), *quoting Illinois Fuel Co. v. Mobile & Ohio R. Co.,* 319 Mo. 899, 8 S.W.2d 834, 840 (1928). "A joint contract is one by which two or more promisors are jointly bound to fulfill its obligations, and either of whom may be charged with the entire liability under the contract." *Don L. Tullis & Associates, Inc. v. Gover,* 577 S.W.2d at 900. However, in addition to the common law understanding of joint and several liability under the terms of a contract, section 431.110, RSMo.1978, provides that "[a]ll contracts which, by the common law, are joint only, shall be construed to be joint and several." Therefore, appellants are jointly and severally liable to respondent by the common law combined with statutory authority.

 Appellants isolate references to "Second Party" in the marketing contract to support their contention that the contract language contemplated services by only one of the individuals comprising the "Second Party," i.e. Stanley Beggs, and omitted appellants. "An instrument is not to be construed by focusing upon a single aspect thereof and ascribing a meaning thereto, without reference to its context in the whole instrument." *Butler v. Centerre Trust Co.,* 656 S.W.2d· 831, 834[2] (Mo.App.1983). "That could result in construction by distortion." *Id.* While appellants argue only Beggs was knowledgeable in the day-to-day mechanics of apple processing and storing, the practical construction given to a contract by the parties may not be considered where the contract is free from ambiguities. *J.E. Blank, Inc. v. Lennox Land Co.,* 351 Mo. 932, 174 S.W.2d 862, 868[8] (banc 1943). "In such a case the contract must be construed as written." *Id.* "In other words, the general rules of

construction may not be used to create an inconsistency or ambiguity where none exists." *Clayton Brokerage Co. of St. Louis, Inc. v. Raleigh*, 679 S.W.2d 376 (Mo. App.1984). "While the construction the parties themselves place upon an agreement is of considerable significance in ascertaining the meaning of terms in an ambiguous contract, a contract free from ambiguity is to be construed as written." *Dehner Urban Redevelopment Corp.-St. Louis v. Dunn & Bradstreet, Inc.*, 567 S.W.2d 700, 704[5–7] (Mo.App.1978). "It is only when the contract or contract term is unclear that the court considers evidence of how the contract was understood or acted upon by the parties." *Id.* We find no ambiguity exists in the term "Second Party." "A provision is ambiguous only when it is reasonably susceptible of different constructions and not by the fact that the parties do not agree on its construction." *Republic National Life Ins. Co. v. Missouri State Bank and Trust Co.*, 661 S.W.2d 803, 808 (Mo.App.1983). The contract specifically lists who comprise the "Second Party." Rules of construction applicable only when ambiguity exists have no bearing on this case. We need not go beyond the face of this unambiguous instrument to divine the parties' intentions to whom "Second Party" actually referred. Because the identity of the persons in "Second Party" is clear, we find no merit to appellants' claim that, despite their inclusion as "Second Party," they were not intended to be jointly and severally liable under the contract.

 Appellants' second issue contends the marketing contract lacked consideration "for any promise made in the contract by appellants in their individual capacity." We, like respondent, are somewhat mystified by appellants' point. From their argument, we glean appellants' point to be that no consideration existed for the contract promises by appellants because no benefit from the contract would inure to them individually. Appellants state that they as individuals, received no share of the profits from the sale by Pioneer Orchards of respondent's apples. They argue to hold them individually liable, absent personal profit to them, is illogical. Appel-

lants misunderstand what constitutes consideration to support a finding that a binding contract was created. Actual benefit is not necessary to constitute consideration. *Cox v. A.P. Green Fire Brick Co.*, 230 Mo.App. 774, 75 S.W.2d 621, 625[2] (1934). Either a detriment to the promisee or benefit to the promisor can constitute consideration sufficient to support a contract. *W.E. Koehler Construction Co., Inc. v. Medical Center of Blue Springs*, 670 S.W.2d 558, 561[3, 4] (Mo.App.1984). Detriment to promisee may consist of doing anything legally he is not bound to do or refraining from doing anything he has a right to do. *See Heath v. Spitzmiller*, 663 S.W.2d 351, 356 (Mo.App.1983). Valuable consideration may consist of some right, interest, profit or benefit accruing to one party, or some forbearance, loss or responsibility, given, suffered or undertaken by the other. *Atherton v. Atherton*, 480 S.W.2d 513, 518[6] (Mo.App.1972). Even slight consideration is sufficient to support a promise. *Ireland v. Shukert*, 238 Mo.App. 78, 177 S.W.2d 10, 15[7–9] (1944).

 Even a cursory reading of the marketing contract reveals consideration supports it. Respondent Moore promised to furnish certain equipment to the Second Party who, in turn, promised to maintain the equipment and be responsible for the cost of repairs. The parties agreed to give the Second Party an option to buy a one-half interest in the equipment. From these promises, consideration flowed to respondent because he acquired the benefit of having his equipment maintained and repaired. Consideration flowed to the Second Party, including the appellants, because it acquired the benefit of the use of the machinery and the right to purchase a one-half interest in the equipment. That consideration supports the contract is unassailable. We find no merit to appellants' second issue.

 Appellants' final issue states the trial court erred in failing to stay the circuit court proceedings on this lawsuit until the conclusion of a bankruptcy case pending in federal court. The bankruptcy petitions had been filed by Pioneer Orchards and Stanley Beggs, appellants' co-defend-

ants in the case at bar. While all the defendants had moved for a stay of the litigation in state court, the trial court granted a stay only to Pioneer Orchards and Beggs. Appellants argue that because a stay was granted to their co-defendants, debtors in bankruptcy, the proceedings should have been stayed for them as well.

The filing of a bankruptcy petition stays legal proceedings against the debtor, pursuant to 11 U.S.C. § 362. The plain language of Section 362 clearly and repeatedly refers to actions against the debtor. Nowhere does the statute imply that the stay applies to actions against non-bankrupts, as well as the bankrupts, in a single proceeding. In the case of *In Re Aboussie Brothers Construction Co.*, 8 B.R. 302 (D.C.E.D. Mo.1981), the United States District Court for the Eastern District of Missouri affirmed the bankruptcy court's refusal to enjoin the plaintiff from continuing with its suit in state court against the individual partners of a bankrupt partnership, despite the possibility that the partners' ability to contribute funds to the reorganization of the debtor might be affected by the suit. *Accord: Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541 (11th Cir.1983); *Almy v. Terrace Land Development, Ltd.*, 32 B.R. 390 (D.C.N.D.Cal.1983); *In re Van Shap, Inc.*, 8 B.R. 73 (Bkrptcy, N.D.Ohio 1980); *In re Larmar Estates, Inc.* 5 B.R. 328 (Bkrptcy, E.D.N.Y.1980).

Appellants argue the stay should apply to them, as well as their co-defendants, because allegations against their co-defendants and themselves are interwoven, presenting common questions of law and fact which could be resolved in one proceeding. In support of their argument, they cite *Federal Life Insurance Company (Mutual) v. First Financial Group of Texas, Inc.*, 3 B.R. 375 (D.C.S.D.Tex.1980). In *Federal Life*, the district court judge refused to permit a plaintiff to sever its claim against the bankrupt and proceed against the individual defendants, one of whom was the corporate officer of the bankrupt, on a charge of procuring monies by fraud and misrepresentation. The court stated that the allegations against the bankrupt and its officers were "inextrica-

bly interwoven, presenting common questions of law and fact, which can be resolved in one proceeding," *id.* at 376, and "arise from the same factual and legal basis." *Id.* at 377. Despite this language, the court seemed to rest its conclusion not on the automatic stay provision, but on the court's inherent discretion to permit or deny severance of actions in light of considerations of justice and efficiency.

The reasoning of *Federal Life* does not appear determinative of the instant issues. *Federal Life* had emphasized that severance "would not be conducive to judicial economy and would unduly hinder the efforts of the Bankruptcy Court." *Id.* at 376. No evidence of judicial economy being jeopardized or the bankruptcy court being hindered exists. No showing that the failure to grant a stay worked a hardship on appellants exists. We see no reason to extend the statutory protection afforded bankrupt debtors by Section 362 to related, but also independent non-bankrupt co-defendants. Point denied.

Judgment affirmed.

CRIST, P.J., and STEPHAN, JJ., concur.