BENSON OPTICAL COMPANY, INC.,
Plaintiff/Respondent,

v.

James S. FLOERCHINGER, M.D., et
al., Defendants/Appellants.

No. 57524.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 9, 1991.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 15, 1991.

Application to Transfer Denied
July 23, 1991.

Frederick W. Drakesmith, St. Charles, for defendants/appellants.

Clyde C. Farris, Jr., Lori K. Cockran, St. Louis, for plaintiff/respondent.

CARL R. GAERTNER, Judge.

Defendant, Dr. James S. Floerchinger, M.D., appeals from a judgment entered against him in the amount of $175,000 following a jury trial in a breach of contract action. We reverse and remand.

Dr. Floerchinger practices ophthalmology as an employee of James S. Floerchinger, M.D., Inc., a professional corporation (Floerchinger, Inc.). This action was commenced by Benson Optical Company, Inc.,

(Benson) on September 4, 1987, by the filing of a three-count petition against Dr. Floerchinger. Count I sought damages for the doctor's alleged breach of a sublease under which Benson rented premises from Dr. Floerchinger. Count II alleged the doctor had wrongfully converted personal property owned by Benson. Count III charged the doctor with tortious interference with contracts of employment with Benson and certain of its employees. On September 8, 1987, Floerchinger, Inc. filed suit against Benson alleging, inter alia, a breach of the sublease between it and Benson. The two actions were consolidated and the claim of Floerchinger, Inc., was treated as a counter-claim. On October 5, 1987, Benson filed an amended petition, adding Floerchinger, Inc. as a party defendant, and alleging the breach of the sublease, the conversion, and the tortious interference were committed either by Dr. Floerchinger or Floerchinger, Inc., or both.

The evidence showed that Dr. Floerchinger began practicing ophthalmology in St. Charles, Missouri in 1973 in premises leased from the St. Charles Clinic. The record fails to disclose whether this lease was between the clinic and Dr. Floerchinger or Floerchinger, Inc. From the inception of his practice, Dr. Floerchinger had an oral arrangement with Ostertag Opticians, through which Ostertag maintained an optical shop within the leased premises. This arrangement, Dr. Floerchinger testified, consisted of an oral agreement for Ostertag to rent space and to furnish optician's services to the doctor's patients and to others. The oral agreement was terminable by either party on thirty-days notice. Eventually Benson purchased Ostertag Opticians. Carl Von Glinow, an officer of Ostertag with whom Dr. Floerchinger had dealt over the years, continued as the regional manager of Benson. He advised the doctor that Benson required a written lease for its records. Benson prepared and Mr. Von Glinow brought to Dr. Floerchinger a written five-year sublease which the doctor signed in November, 1981. The opening paragraph of the lease provided:

This sublease agreement entered into this 17 day of November, 1981, by and between James Floerchinger, M.D., Inc., 2860 West Clay, St. Charles, Missouri, 63301 and Benson Optical Company, Inc., 6600 France Avenue S., Minneapolis, Minnesota, 55435, is for the purpose of setting forth the terms and conditions of space being subleased by Dr. James Floerchinger to Benson's for an opticianary.

Paragraph seven of the lease stated:

Lessee will provide lessor, in this instance Dr. James Floerchinger, with a certificate of insurance....

The sublease contained no provision for termination before the expiration of the five-year term. One signature line on the sublease contained the typewritten words "Benson Optical Company, Inc., by Lee K. Anderson, executive vice-president." Below the second signature line was the typewritten name "James Floerchinger, M.D." And on this line appears the signature "James S. Floerchinger, M.D." In 1986, a sublease was prepared by Benson for a three-year period with an option to renew for three years. The only difference between the first and the second sublease were the dates, the term, the rental, the option, and the name of Benson's vice-president.

Not long after the execution of the 1986 sublease, Dr. Floerchinger became dissatisfied with the quality of the work and services furnished by Benson to his patients. After some correspondence and meetings, Dr. Floerchinger terminated the lease on July 1, 1987, thereby precipitating this litigation.

Benson submitted Count I for breach of the lease only against Dr. Floerchinger individually by an instruction based upon MAI 26.02, Breach of Bilateral Contract—Breach Sole Issue. On this count with the corresponding verdict form naming Dr. Floerchinger individually as the sole defendant, the jury found in favor of Benson. On the conversion count, also directed only against Dr. Floerchinger individually, the jury found against Benson. The tortious interference count was abandoned. On the counter-claim of Floerchinger, Inc., the jury found in favor of Benson. The only

appeal which has been filed is that by Dr. Floerchinger, individually, from the judgment against him on Count I.

■ In his first point on appeal, Dr. Floerchinger charges trial court error in the denial of his motion for directed verdict at the close of all the evidence and his motion for judgment not withstanding the verdict because of the absence of evidence that he had any personal liability under the sublease between Benson and Floerchinger, Inc.

Benson's amended petition alleged the sublease was between it and "Floerchinger or Floerchinger, Inc., or both." As plaintiff, Benson assumed the burden of proving one or more of these alternatives. In his pleadings, Dr. Floerchinger admitted Floerchinger, Inc., was a party to the sublease, but consistently denied his individual involvement.

■ Corporations, including professional corporations, are legal entities distinct from their officers, directors, and shareholders. Generally, no liability may be imposed upon the latter for obligations of the corporation.[1] In conducting the business of a corporation, its officers and employees act as its agents. It is a fundamental tenet of agency law that an agent has no personal liability for the breach of a contract entered into on behalf of a disclosed principal in the absence of evidence showing an intent by the agent to be personally obligated. *Ingram v. Lupo*, 726 S.W.2d 791, 794 (Mo.App.1987). "The presumption, in such cases, is that it was the agent's intention to bind his principal and not to incur personal liability, and an agent will not be bound personally, except upon clear and explicit evidence of an intention to be bound." *Wired Music, Inc. v. Great River Steamboat Co.*, 554 S.W.2d 466, 468 (Mo.App.1977), quoting from *Bridges v. Rice*, 99 S.W.2d 531, 534 (Mo.App.1936).

Although the distinction between Dr. Floerchinger and his corporation was carefully preserved throughout the pleadings, it virtually disappeared during the trial. In the three volume transcript consisting of 641 pages, the existence of James Floerchinger, M.D., Inc. is mentioned only about six times. The attorneys and the trial court consistently referred to "the defendant" in the singular. Benson's claims were submitted to the jury under instructions directed only against Dr. Floerchinger, while the counter-claims submitted the claim of Floerchinger, Inc., but neither attorney mentioned the corporation during jury argument. Dr. Floerchinger testified he was an employee and sole stockholder of Floerchinger, Inc., but when referring to his dealings with representatives of Benson he consistently used the first-person pronouns "I" or "me" or "my". Although Benson points to this terminology as indicating the doctor's acknowledgment of an intention to be personally bound by the sublease, the western district rejected a similar contention in *Kay v. Freeman*, 785 S.W.2d 90 (Mo.App.1990) and reversed a judgment against the president and sole stockholder of a disclosed corporation. The court refused to consider his use of personal pronouns as substantial evidence of an intention to be personally bound by a contract stating, "[t]his evidences no purpose on Freeman's part to be bound personally; one would expect the use of those terms in informal speech or writing and they are not indicative of a purpose to assume personal liability." *Id.* at 92. Similarly, in *Moseley & Co. v. Building Leasing Corp.*, 581 S.W.2d 399 (Mo.App.1979), a judgment against a corporation president was reversed despite his use of personal pronouns in his negotiations and correspondence, because such evidence failed to establish the necessary "mutuality of intention" that he be personally bound in the transaction. *Id.* at 401.

■ We find nothing in the testimony adduced at the trial tending to show that Benson or Dr. Floerchinger ever discussed or even considered the question of the doctor's personal liability on the sublease between Benson and James Floerchinger,

---

[1]. Section 356.171 RSMo.1986 imposes individual liability upon an employee of a professional corporation but only for the employee's negligence, omission, or wrongful act in the rendering of professional services. The statute has no application to this breach of contract action.

M.D., Inc. However, in considering the question of the submissibility of plaintiff's case, we must view all evidence in the light most favorable to the plaintiff, giving it the benefit of all inferences reasonably drawn from the evidence. *Douglas v. Hawkins,* 790 S.W.2d 485, 486 (Mo.App.1990).

 The concomitant of the presumption that one who signs a contract as an officer or agent for a disclosed principal does not intend to be bound personally, is the presumption that one who signs a contract "without limitations, to an instrument ... with no limitations stated in the body of the instrument," intends to be bound even though the principal is disclosed. *Moore v. Seabaugh,* 684 S.W.2d 492, 495 (Mo.App.1984); *Meyers v. Kilgen,* 177 Mo. App. 724, 160 S.W. 569, 573 (1913); *accord, Suburban Business Products v. T.E. Schmitt Co.,* 796 S.W.2d 77, 78 (Mo.App. 1990). In *Seabaugh,* we held that where two defendants signed a contract as individuals, not as agents, and where their names were included within the identification of one of the parties to the contract, the question of their intent to be personally bound was for the trier of fact. We concluded that a signature without limitation on an instrument showing no limitation constitutes a prima facie case of the agent's personal liability, and the burden of rebutting the presumption thus created falls upon the agent. *Seabaugh,* 684 S.W.2d at 495. In this case Dr. Floerchinger not only signed the sublease without limitation, but also was twice identified without corporate designation as the lessor within the body of the document. Under the teaching of *Seabaugh,* this gives rise to a presumption of personal liability which, if not rebutted, is sufficient to make a submissible case. "[G]enerally a presumption of fact takes flight when contrary facts appear[.]" *Alexander v. F.W. Woolworth Co.,* 788 S.W.2d 763, 765 (Mo.App.1990). However, in this case Dr. Floerchinger did not dispute the language of the sublease identifying him as the lessor. Nor did he deny that his unrestricted signature reflected his intention to be personally liable. Accordingly, the document itself, standing unexplained and unrefuted, creates a presumption of personal liability upon the part of Dr. Floerchinger sufficient to support the submission of that issue to the jury.

Notwithstanding Dr. Floerchinger's failure to testify regarding his personal liability under the sublease, he did consistently deny any personal involvement with the sublease in his pleadings. Thus, an issue of fact to be determined by the jury existed. Benson submitted its case to the jury under the following instruction:

> Your verdict must be for plaintiff Benson Optical Company if you believe:
>
> First, Defendant Dr. James Floerchinger, M.D. did not permit plaintiff Benson Optical Company to occupy the premises for the full term of the lease, and
>
> Second, because of such failure, defendant Dr. James Floerchinger, M.D.'s contract obligations were not performed, and
>
> Third, plaintiff Benson Optical Company was thereby damaged.

It is obvious that this instruction assumed as true the very issue the jury should have decided: that Dr. Floerchinger had personal obligations under the contract. The prejudice engendered by this assumption of disputed fact is obvious.

 We reject Benson's argument that Dr. Floerchinger waived his objection to the instruction by failing to object at the instruction conference. He did make the objection that the instruction was not supported by the evidence. Furthermore, the concept of waiver of instructional error by failing to object at trial, as discussed in such cases as *Fowler v. Park Corp.,* 673 S.W.2d 749, 755–757 (Mo. banc 1984) and *Hudson v. Carr,* 668 S.W.2d 68, 70–72 (Mo. banc 1984), applies to deviations from MAI, not to all instructional error under Rule 70.03. *Nakata v. Platte County R–3 School Dist.,* 750 S.W.2d 669, 673 (Mo.App. 1988). The failure to object during the instruction conference is a factor for consideration in determining the prejudicial effect of an erroneous instruction. As stated in *Nakata,* the submission of an instruction lacking evidentiary support is misleading

and the failure to object does not make the prejudice any less. *Id.* at 674. That conclusion is even more applicable to an instruction which assumes as true the disputed fact at issue.

■ A search of the record fails to disclose any attempt by Benson to seek leave of court to dismiss without prejudice its claim against James Floerchinger, M.D., Inc., pursuant to Rule 67.01. The failure to submit this claim to the jury at the conclusion of the evidence constitutes an abandonment thereof. Accordingly, because of instructional error, the judgment is reversed and the cause is remanded for a new trial of Benson's claim against Dr. Floerchinger.

SMITH, P.J., and SATZ, J., concur.