## BROWN, Respondent, v. SMITH et al., Appellants.

St. Louis Court of Appeals, May 16, 1905.

1. **CONTRACTS: Proposition and Acceptance.** A contract consisting of a proposition signed by only one of the parties, when acted upon by the other party, is binding.

2. **REAL ESTATE BROKER: Procuring Purchaser.** A real estate broker earns his commission when he finds and produces to the seller a purchaser who is ready, able and willing to buy upon the terms upon which the broker is authorized to sell.

3. ———: ———: **Inability to Make Title.** When a real estate broker produces a purchaser ready, able and willing to buy, the seller can not be excused from paying his commission by the fact that he is unable to complete the sale on account of not having title.

Appeal from Stoddard Circuit Court.—*Hon. James L. Fort,* Judge.

AFFIRMED.

*W. H. Miller* for appellant.

(1) Plaintiff sues on a written contract by which he was authorized to sell on account of defendants the west half of northwest quarter and northwest quarter of southwest quarter and southeast quarter of southwest quarter of sec. 9, 25, 15. The alleged contract is an unanswered letter from defendants to plaintiff, dated March 9, 1902. There was no acceptance in writing by plaintiff. This did not constitute a contract. Pub. & Engr. Co. v. Walker, 87 Mo. App. 503; Cloth Co. v. Shorp, 83 Mo. App. 385. (2) Plaintiff, having sued upon a written contract, must recover, if at all, upon the contract as pleaded, and when the testimony shows a failure to comply with the contract as pleaded there can be no recovery. Cole v. Armour, 154 Mo. 351, 55 S. W. 476; Huston v. Taylor, 140 Mo. 252, 36 S. W. 654, 41 S. W. 795; Clements v. Yates, 69 Mo. 625; Furth v. Anderson, 37 Mo. 354; Veatch v. Norman, 95 Mo. App. 500, 69 S. W. 472.

*Boone & Lee* for respondent.

(1) Although the contract is not signed by the party suing on it, yet if it is clear either from his words or actions that he assented to it, he may enforce its obligations. Pub. Co. v. Walker, 87 Mo. App. 508. (2) If the owner employs a broker to sell real estate and the broker procures a purchaser who is willing and able to buy and who offers to do so, then the broker has earned his commission, whether a sale is made or not. Gaty v. Foster, 18 Mo. App. 639. If the contract of sale is not completed on account of the fault of the owner, the agent is nevertheless entitled to commissions. Carpenter v. Rynders, 52 Mo. 278; Bailey v. Chapman, 41 Mo. 537; Harwood v. Diemen, 41 Mo. App. 49; Veach v. Norman, 95 Mo. App. 500, 69 S. W. 472; Woods v. Stevens, 46 Mo. 556; Stinde v. Belsch, 42 Mo. App. 581.

STATEMENT.

This case originated in Mississippi county and by change of venue, was transferred to Stoddard county, where it was tried by a jury in the circuit court. Plaintiff recovered a judgment and defendants appealed. It is a suit by a real estate broker for commissions claimed to have been earned by him for selling certain lands. The petition, in substance, avers that plaintiff is a real estate broker, whose business is selling lands for commissions; that defendants owned certain lands (describing them) in Mississippi county and that on March 9, 1902, defendants agreed in writing that in consideration of plaintiff selling said lands or procuring a purchaser therefor at the price of $35 per acre, they would pay plaintiff ten per cent of the total amount of the purchase price on account of said sale, as commission; that acting upon this agreement and employment, plaintiff procured a purchaser who was ready, able and willing to buy said lands and that defendant refused to convey the lands to the purchaser, wherefore he asks judgment for his commissions.

The evidence developed that plaintiff is a real estate broker at Charleston. Defendants, who are in business at Sikeston in Scott county, owned 440 acres of land in Mississippi county near Dog Wood Church, which they desired to sell. That on the day given in the letter hereinafter set out, C. M. Smith, one of the defendants, acting on behalf of himself and his codefendants, wrote plaintiff the following letter:

"Sikeston, Mo., Mar. 9, '02.

"H. M. Brown,

"Charleston, Mo.

"Dear Sir & Friend:

"Your letter to hand and contents noted. If you can sell our 440 a. tract of land, east of Dog Wood Church, in Miss. Co., for thirty-five dollars per acre, to any man that we ain't on a trade with, we can allow you

ten per cent. This will apply also to any other lands which you may sell for us; must be sold, however, to men that we havn't agreed to pay anybody else a commission. Always notify us by phone or wire the party's name that you expect to show land to; 310 a. of this land is cultivated, about 216 acres in wheat now. Bal. all deadened; raises fine wheat and corn.

"Respectfully,

"C. M. SMITH."

This letter was the contract declared on in the petition. It was not filed with the petition originally but was so filed by leave of court before the trial. Acting upon this letter, plaintiff found two brothers, Wm. L. Ponder and Phillip J. Ponder, prospective land purchasers, and took them out and showed them the 440 acres of land referred to in the letter. The plaintiff notified the defendants of having the buyers and one of the defendants, at the instance of the others, came and joined the party and went with them to the lands, aiding and assisting in showing and talking them up. They looked over the lands carefully and discussed the good and bad features thereof with the result that Wm. L. Ponder bought 200 acres of the land, for which in due time he paid the defendants, and on this 200 acres defendants paid plaintiff his commission. The evidence shows that the other brother, Phillip J. Ponder, while he was a prospective buyer, was not yet quite ready to close a deal for the land, as he had not sold his farm in another county; that he expected and intended to sell his farm and buy in Mississippi county. That on the same day and at the same time and as a result of the same negotiations by which Wm. L. Ponder bought the 200 acres, Phillip J. Ponder took an option in writing upon the 200 acres of the remaining land owned by defendants there, which option was attached to the contract of sale executed by defendants to Wm. L. Ponder, which he had that day purchased and afterwards paid for. The option taken by Phillip J. Ponder upon the 200 acres of land and

about the sale of which this controversy arose, is as fol-
lows:

"The said Smiths agree to sell to Phillip J. Ponder
all of the northwest quarter, and the northwest quarter
of the southwest quarter of section nine (9) in township
twenty-five (25), north of range fifteen (15) east, in
Mississippi county, Missouri, at the price of thirty-five
dollars per acre, as soon as they can make a good title to
same, the time not to exceed six months.

"C. M., J. C. and W. R. SMITH."

It appears in the evidence that at the time this op-
tion was given to Phillip J. Ponder, eighty acres of this
land was in litigation in the suit of Phillips v. Pressen,
which was then pending in the Supreme Court of Mis-
souri and was afterwards decided adversely to the de-
fendant in this case and is reported in 172 Mo. 24. Be-
cause of this litigation, defendants refused to make a
present sale of the 200-acre tract of which it was a part,
to Wm. L. Ponder, who desired it in preference to the
200 acres which he purchased, but that defendants made
assurances to the effect that they could and would per-
fect the title to these eighty acres in six months time and
be able to convey good title thereto within the six
months. Phillip J. Ponder returned to his home and
proceeded to and did sell his farm, preparing to take the
lands contracted for in said option. In the meantime
defendants tried to buy the adverse title to the eighty
acres in litigation and offered $500 in cash and $300 in
an account to Mr. Russell, attorney for the Phillips' heirs
who held the adverse title. This offer was declined and
Mr. Russell, representing his clients, asked defendants
$1,000 for their title to said lands. Defendants did not
feel like paying $1,000, therefore, no purchase thereof
was made. About the first of September, 1902, and fifteen
days before the expiration of the option on said lands,
Phillip J. Ponder having disposed of his farm, came to
Mississippi county with the ready cash to close the deal
for the lands. He called upon defendants and not only

offered to take the lands but insisted upon defendants perfecting the title and conveying the lands to him. He then had the money and was ready, able and willing, and in fact, was anxious to procure a deed for the lands and pay cash therefor but defendant refused to convey, saying they could not get the outstanding title to the eighty acres. Mr. Ponder then offered to take the 120 acres at the agreed price, the title to which was not in question, but defendants refused to convey this, claiming that as they could not perfect the title to the eighty acres, this rendered the option void, and therefore they were not bound to convey any of the lands. It transpired, however, that about August 14, a couple of weeks before Ponder came to close the deal and a month before the option expired, defendants had contracted the 120 acres mentioned to one John Anderson for $40 an acre, and a month later, after the option expired, conveyed the lands to Anderson. Defendant C. M. Smith, who transacted the principal part of the business for the defendants in this matter, testified as to what occurred when Ponder came to see him as follows:

"Q. You made no further effort to get the land? A. Yes, sir; I made another effort after that. I went to Clark Russell myself and he told me that he would not take less than $1,000 and I told him I would not do that but when Mr. Ponder came over and wanted the land I went to Charleston and offered him $1,000, but he would not take it.

"Q. Well, you didn't tell Ponder anything about your negotiations with Anderson, did you? A. Yes, sir; I told Mr. Ponder at that time that that land was sold to John Anderson if it wasn't taken under this option now. I says, 'Mr. Ponder, we wanted to treat you like a gentleman' and I says, 'to convince you I am sincere about it, I will let you go and see Mr. Russell and I will pay $1,000, if that will settle it, and I will deed you the land.' "

Further explaining, defendant testified as follows:

"A. Yes, sir, the last time was after I gave this gentleman the option I went to work on it; I got Joe Russell to talk to Clark about it, and after he told me what Clark said I did not know how to manage it. I wanted to comply with this contract and I went to Clark Russell myself and he said he would not take less than $1000.

"Q. When was that? A. Along in the Spring.

"Q. You wasn't willing to give that then? A. No. sir. . . .

"Q. You sold this land to Anderson on the 16th of September, didn't you? A. I sold it to him back of that.

"Q. You conveyed it on the 16th of September, 1902? A. Yes, sir.

"Q. Because the Ponder option runs out then? A. Can I explain that?

"Q. Yes, sir, you can if you want to, go ahead. A. I want to show the real position of it. Mr. Russell and Mr. Anderson and everybody knows that I wanted the full six months to perfect that title to the eighty acres within that time so this man could have that land—that 200 acres—but we could not do it and I told Mr. Anderson the option was void and I would deed it to him on the 16th of September, which was done."

The evidence shows that plaintiff Brown kept constantly in touch with the land deal involved in this case and that numerous letters passed back and forth between the defendants and himself and the Ponder brothers about the same; that the purchaser, Phillip J. Ponder, was not a man whom defendants had agreed to pay any person a commission on a sale to nor was he one with whom they had been on trade; that both the Ponder brothers were customers found and procured by the plaintiff. It also appears that defendants themselves had sold forty acres of the 440-acre tract mentioned in the letter of authority to Brown hereinbefore set out, thereby leaving only 400 acres in the entire tract of

113 app—5

which 200 acres were sold to Wm. L. Ponder, and eighty acres with a defective title which was afterwards lost to them in the litigation pending. This left only 120 acres therein which might be sold and sufficient title made thereto.

NORTONI, J. (after stating the facts).—Appellant argues that there was no evidence showing respondent Brown accepted the proposition to sell the lands for ten per cent commission contained in appellant's letter supra. There was some evidence tending to show that respondent wrote to appellant telling him that he would go to work on the proposition. But be that as it may, all of the evidence shows that he did accept the proposition contained in the letter and that he immediately commenced to work thereon. The letter is dated March 9. On the 15th day of the same month, in company with one of the appellants, he conveyed the two Ponder brothers to the lands and actually consummated a sale of 200 acres of the tract to one of them and negotiated a bargain for the other 200 acres as mentioned in the option and appellants ratified the act by participating therein, making a deed to the tract bought by Wm. L. Ponder and paying respondent $700 commissions thereon. The fact that respondent proceeded at once with the full knowledge and consent of appellants to perform the terms of the proposition was sufficient evidence that he understood and accepted its terms. Here was a clear meeting of the minds of competent parties upon the subject-matter for a sufficient consideration, and what more is required to constitute a contract of employment as shown in this case? Nothing more can be adduced to make a valid contract. Executory contracts of this kind, containing a proposition signed by only one of the parties, when acted upon by the other party, are always held binding. [Stone v. Ostranger, 31 Mo. App. 544; Amer. Pub. Co. v. Walker, 87 Mo. App. 503; Lewis v. Ins. Co., 61 Mo. 534.]

Appellants tried this case in the court below and has presented it here as though it were a suit by Phillip J. Ponder against appellants upon the option contract in evidence, seeking to enforce said option. We do not incline to that view of the case. The suit is not on the option. It is by a broker for his commissions upon an allegation that he had made a sale of the lands under the contract by which he was employed to sell the same for appellants. That contract is the letter of March 9, by the provisions of which he was authorized to sell 440 acres of land for $35 an acre to any man that the appellants were not on a trade with and for his services therein he was to receive ten per cent commissions. The same terms were to apply to any other lands he sold for appellants. But the lands "must be sold, however, to a man that we haven't agreed to pay anybody else commission." We suppose that appellants had also other agents engaged to sell their lands and it was intended by this last rather inartistic provision to provide against their being complicated by respondent possibly negotiating with parties with whom other agents had been negotiating and he was therefore warned not to get them into trouble whereby they would possibly be compelled to pay commissions to two or more agents. This matter is wholly immaterial to this case, however. Ponder was not a man with whom appellants had been negotiating a trade, therefore the contract was that if respondent should sell the 400 acres for $35 per acre, appellants would pay him ten per cent commissions. Respondent sold 200 acres that appellants conveyed to Wm. L. Ponder and received his commission thereon and this left in his hands 240 acres for sale, forty acres of which was sold by appellants. At the same time the sale of the 200 acres was made to Wm. L. Ponder, respondent produced and introduced to appellants, Phillip J. Ponder, who negotiated for 200 acres and took the option on it. By the option in evidence, appellants agreed to sell to Phillip J. Ponder the 200 acres "at $35 per acre, as soon as they

could make a good title to the same, the time not to exceed six months." We construe the last clause of this option to mean, when taken in connection with the body thereof, that the title shall be made good by the appellants and that they bound themselves to convey to him a good title within six months. This put the burden on appellant to make the title good. That they so understood it and intended and expected to do so, all the evidence shows. One of the appellants testified that they immediately went to work toward perfecting the title to eighty acres of the land which was the only defective title involved, and that he offered $800 to make the title good. The parties with whom he was negotiating asked $1,000. This he did not feel like giving. He admits, in the meantime, of having received an offer of $40 per acre for 120 acres, the title of which was good and says that when Ponder came to close the contract and take the land, he wanted to carry out the contract and then offered Mr. Russell $1,000 for a deed to perfect the title to the 80 acres but that Russell declined the offer and therefore he decided not to do anything further toward perfecting the title and that when Ponder offered to take the 120 acres at the same price, he contended that the sale was for 200 acres and not for 120 acres and as he had not been able, up to that time, to perfect the title to the eighty acres, he refused to convey at all. The law in cases of this kind is too well settled to require discussion. A real estate broker earns his commission when he finds and produces to the seller a buyer for the land who is ready, able and willing to buy upon the terms upon which the broker is authorized to negotiate the sale. [Goodson v. Embleton, 106 Mo. App. 77, 80 S. W. 22; Finch v. Trust Co., 92 Mo. App. 263; Finley v. Dyer, 79 Mo. App. 604; Huggins v. Hearne, 74 Mo. App. 86; Hayden v. Grillo, 45 Mo. App. 1; s. c., 35 Mo. App. 647; s. c., 26 Mo. App. 289; Gelatt v Ridge, 117 Mo. 553, 23 S. W. 882; Nesbit v. Helser, 49 Mo. 383.] In this case the evidence on the part of both the respondent and ap-

pellant shows the broker performed his part by produc-
ing a buyer who took an option and in due time, in ac-
cordance with such option, arranged his business af-
fairs and became ready, able and willing to buy, went to
appellants and insisted upon doing so, and was prevent-
ed by the deliberate act of appellants in refusing to per-
fect the title and convey the 200 acres to him and further
refused to convey to him the 120 acres, leaving out of the
question the eighty acres with defective title. In a case
where the owner refused to convey, as in this case, the
law declares the sale complete, so far as the broker is
concerned, and his commissions are due upon his produc-
ing a purchaser ready, able and willing to buy. The per-
formance upon the part of the broker was then complete
and the sale consummated so far as the agent was con-
cerned, for the reason that he had done all he had con-
tracted to do and all the law requires. He was helpless
and could do no more. Ir such cases the law regards the
sale as complete in so far as the agent, his services and
commissions are concerned. [Goodson v. Embleton, 106.
Mo. App. 77, 80 S. W. 22; Real Estate Co. v. Ruhlman,
68 Mo. App. 503; Wright & Orison v. Brown, 68 Mo.
App. 577; Hart v. Hopson, 52 Mo. App. 177; Stinde v.
Blesch, 42 Mo. App. 578; Hayden v. Grillo, 42 Mo. App.
1; Gelatt v. Ridge, 117 Mo. 553, 23 S. W. 882.]

The recovery in this case was ten per cent of the
total for the sale of 120 acres of land. It could have
been for ten per cent on the sale of 200 acres. The evi-
dence in the record would have warranted it. To con-
strue the option as appellants would have us construe it,
could not relieve them from paying the commissions.
Respondent was employed to sell 440 acres of the land of
which he had sold 200 acres and appellants had sold
forty acres, thus leaving 200 acres, and he was entitled
to his commissions upon producing a buyer ready, able
and willing to take 200 acres or any part thereof that
appellants could convey. While the employment to sell
the 200 acres might not have entitled respondent to com-

missions upon producing a buyer for 120 acres, yet when it appears as a matter of fact that he produced a buyer for all of the 200 acres that appellants were able to convey, then he performed all that he was required to perform, and appellants were bound to convey so much thereof as they could make sufficient title to. They could not be excused from paying respondent's commissions when he had wholly performed on his part, by the mere fact that they found themselves unable, or had done some act which rendered them unable to perform on their part. "A principal cannot relieve himself from liability by a refusal to consummate the sale or by a voluntary act of his own, disabling him from performance." [Bailey v. Chapman, 41 Mo. 536; Nesbit v. Helser, 49 Mo. 383; Woods v. Stephens, 46 Mo. 553; Goodson v. Embleton, 106 Mo. App. 77.] Upon appellants declaring their inability to convey good title to the whole tract, the buyer expressed a willingness and offered to pay cash for 120 acres at the agreed price. This was all the law required and entitled respondent to commissions on the 120 acres at all hazards, and was ample evidence to support the finding of the jury for commissions on the 200 acres if the jury had so found. After the broker had devoted his time and labor in a transaction to which he was moved by appellants employing him, he could not be defeated of his compensation because the appellants found themselves unable to perform. This was a matter they should have taken into account before employing a broker and not after.

The only errors in the instructions on the part of respondent were against respondent's interests and therefore appellants were not aggrieved thereby. The first instruction on the part of the plaintiff submitted the question to the jury as to whether or not appellants agreed by the option, unconditionally to convey the 200 acres, whereas the court should have construed the option as we have done, and told the jury that appellants had obligated themselves to perfect the title and convey

the 200 acres within six months. The jury however found for the plaintiff to the extent of the commissions on the sale of the 120 acres. The second instruction on the part of plaintiff tells the jury that if plaintiff procured a purchaser who was ready, willing and able to buy, even though no sale was actually made, plaintiff was entitled to recover. The court should have declared that upon plaintiff's procuring and introducing a purchaser ready, able and willing to buy as appeared in evidence, that the sale was then consummated in so far as the agent was concerned and that his commissions were due thereon, if the jury found the facts to be as predicated in other parts of the instruction.

It is unnecessary to notice the other question raised in appellant's brief. The only errors committed in this case were against respondent. Appellants therefore cannot be heard to complain. The judgment is for the right party and should be affirmed. It is so ordered. All concur