MOSELEY & COMPANY, Respondent,

v.

BUILDING LEASING CORPORATION and Alexander J. Barket, Appellants.

No. 29651.

Missouri Court of Appeals,
Western District.

April 2, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 1, 1979.

Application to Transfer Denied
June 19, 1979.

Barnard D. Craig, Jr., Richard M. Shteamer, John E. Craig, Kansas City, for appellant.

John R. Cleary, Kansas City (Linde, Thomson, Fairchild, Langworthy & Kohn, Kansas City, of counsel), for respondent.

Before HIGGINS, Special Judge, Presiding, PRITCHARD, J., and WELBORN, Special Judge.

PER CURIAM.

Jury awarded Respondent judgment upon claim for commission fees relative to the lease of commercial property. Appellants pursue their direct appeal from that judgment. The evidence on record as reflected in the transcript establishes the following facts.

In the fall of 1973, Respondent was granted exclusive authority, by the owners, to sell property referred to as the Gateway Building. The property is located within an industrial park wherein most of the park properties are owned by Appellant, Building Leasing Corporation, hereinafter referred to as B.L.C.

O'Brien Movable Partition Company, (hereinafter referred to as O'Brien) which at the time was already a tenant in another building across the street from the Gateway Building, was contacted by Respondent relative to possible purchase of the Gateway Building. O'Brien declined to purchase the property, but indicated to Respondent its interest in leasing the building.

On November 30, 1973, Respondent contacted Appellants and advised Appellants that the Gateway Building was for sale. The evidence establishes Appellants were not previously aware of the availability of the property.

The parties agreed Respondent could undertake negotiations for the sale of the Gateway Building to B.L.C. and could undertake negotiations of a lease between B.L.C. and O'Brien. The communications between Respondent and Appellants were between Frank Moseley (representing Respondent) and Alexander Barket. Alexander Barket is the President and Chairman of the Board of B.L.C. and hereafter is referred to as Barket. A commission fee for Respondent was discussed, although Appellants testified they did not agree to a fee in the sum of 6% of the total amount of the lease.

This conversation of November 30, 1973 was, the same date by separate letters, reduced to written form by the parties. Respondent's letter to Appellants restated the 6% commission of the total amount of the lease.

Respondent then proceeded to contact O'Brien and the building owners. O'Brien advised it would contact 60 or 61 of its dealers relative to future expansion by O'Brien. The interest by O'Brien in leasing the property remains obvious from the record. Later, O'Brien informed Respondent that it had heard from about 30% of its dealers and that the total process would take about 60 to 90 days.

On December 3, 1973, Respondent wrote Appellants a letter, the pertinent part which read:

"Alex, on the telephone I advised you the purchase price is $475,000, and I didn't think the building would be bought for less than $450,000. If you want to sign a contract to buy the Gateway Luggage property at $425,000 with the understanding that you advise you will go to $450,000 to buy it, I will submit the $425,000 to see if it is acceptable. If it is not acceptable, then change the contract raising the price to $450,000.

"Here, are the conditions under which we must proceed; or Alex, I will sell the building to whomever makes an acceptable offer first."

Taken by itself, if there was no further evidence, this might appear to be an abandonment effective December 3, 1973; but as the evidence further establishes, on December 26, 1973, Appellants forwarded a letter to Respondent, the pertinent part is as follows:

"I have not lost interest at all in the Gateway Luggage building, but our friends at O'Brien Partitions have put off any expenditures of a capital nature for at least one year, as they are waiting for the economic situation to change."

In this letter of December 26, 1973, Appellants further stated,

"If you can get someone to lease this building reasonably, I will buy it immediately. I do want to work with you, Frank."

In addition to testimony of the parties pertaining to the letters, the letters were received into evidence.

Respondent testified that in April, 1974, it made a follow-up call to O'Brien regarding the leasing of the building. Respondent testified this follow-up was during the time O'Brien was making inquiry as to their market conditions to " * * * see what their conditions were as to going ahead and leasing the building."

On August 2, 1974, B.L.C. purchased the Gateway Building directly from the owners. On September 9, 1974, B.L.C. leased the building to O'Brien. Respondent was not a party to either of these transactions. On September 12, 1974, Respondent contacted B.L.C. relative to payment of its commission. After refusal of payment, suit was filed on December 19, 1974.

■ Six points of error are raised on appeal. Points I, IV, V and VI are taken up together and ruled against Appellants for failure to comply with Rule 84.04(d) and Rule 84.04(e). Compliance with Rule 84.04 is mandatory and requires of the party seeking relief that points relied upon shall state what actions or rulings of the trial court are claimed to be erroneous. *Bell v. Bell*, 538 S.W.2d 733 (Mo.App.1976). It is not the responsibility of the reviewing court to " * * * seine the argument portion of an appellant's brief or the transcript on appeal to ascertain the whereins and whys of claimed errors presented * * *" *Griffith v. State*, 504 S.W.2d 324 (Mo.App. 1974).

Point III raised by Appellants reads as follows:

"The refusal of the Court to dismiss Barket individually from the suit was reversible error and created an unfair and erroneous prejudice of defendants' position in the jury's eyes."

■ A reading of the transcript establishes the parties to this action are experts in the field of commercial property transactions. Both parties enjoy a community reputation relative to that expertise. While the record fails to support Appellants' contention that Appellants were prejudiced " * * * in the jury's eyes * * *", there is no substantial evidence to the effect that Appellant Barket ever acted in an individual capacity. To the contrary, the evidence supports the result he was acting as agent and representative of B.L.C. There was nothing in evidence which established mutuality of intention, such as was discussed in the case of *Wired Music, Inc. v. Great River Steamboat Co.*, 554 S.W.2d 466 (Mo.App.1977), that Barket be personally bound in this transaction.

While caution should be employed in setting aside judgments, they in turn must be supported by substantial evidence. Judgments are subject to the scrutiny of the

reviewing court and if unsupported by substantial evidence, they can be set aside accordingly. Rule 84.13. The judgment must be reversed as to the individual, Barket.

There remains Appellants' contentions under Points II A., II B., and II C., which read as follows:

## II

"The jury verdict was clearly erroneous and the Trial Court's refusal to grant a directed verdict to BLC was reversible error in that:

A. There was an abandonment and break in continuity in the negotiations between O'Brien and BLC, and, as a result, plaintiff was not entitled to receive a real estate commission when BLC and O'Brien nine months later agreed to terms.

B. Plaintiff was not the procuring cause of lease simply because plaintiff introduced the parties nine months prior to lease execution.

C. Plaintiff did not produce a lessee who was ready, willing and able to lease upon the terms outlined by BLC."

Point II A. is ruled against Appellants because the issue of abandonment was for the jury to decide and while controverted, the evidence on this issue was substantial. The jury could, from the evidence, find a continuity of negotiations between the parties. See *Holman v. Fincher*, 403 S.W.2d 245 (Mo.App.1966).

Point II B. is ruled against Appellants for it raises but another fact question upon which the record shows substantial evidence and hence the jury could, from the evidence, find Respondent was the procuring cause of the lease. *Holman v. Fincher, supra.* On the precise question of whether a broker has been the procuring cause of a sale, lease or transaction, see *E. A. Strout Realty Agency, Inc. v. McKelvey*, 424 S.W.2d 98 (Mo.App.1968) and on the question of substantial evidence, see *Reitz v. O'Neil*, 2 S.W.2d 178 (Mo.App.1928).

Point II C. is ruled against Appellants. While Appellants allege Respondent is not entitled to a commission because the latter did not produce a ready, willing and able lessee, if this court had nothing more than this mere allegation by Appellants, the contention would be correct under *Brown v. Smith*, 113 Mo.App. 59, 87 S.W. 556 (1905), but the evidence herein clearly establishes B.L.C. did purchase the property and subsequent to that purchase, B.L.C. entered into a lease with O'Brien.

Since B.L.C. and O'Brien entered into the lease, the issues of readiness, willingness and ability are eliminated from a claim for a commission unless there has been an abandonment. As it has been ruled above, the judgment and the evidence in support of it conclude there was no abandonment. See *Kinsely v. Leathe*, 256 Mo. 341, 166 S.W. 257 (1914); *Kelly v. Craigmiles*, 460 S.W.2d 577 (Mo.1970). That a mere difference in price and terms does not remove the obligation to pay a commission fee, see *Shephard v. Hunter*, 508 S.W.2d 234 (Mo.App.1974).

The judgment as against Appellant Alexander Barket individually is reversed. The judgment in all other respects herein is hereby affirmed.