**Arthur S. KAY d/b/a Arthur S. Kay and Associates, Plaintiff/Respondent,**

v.

**Francis B. FREEMAN, Jr., et al., Defendants/Appellants.**

**No. WD 41956.**

Missouri Court of Appeals, Western District.

Feb. 13, 1990.

Rehearing Denied March 27, 1990.

Reed O. Gentry and Robert R. Barton of Field, Gentry, Benjamin & Robertson, P.C., Kansas City, and Greg W. Thrower of Vern J. Thrower & Associates, P.C., Houston, Tex., for defendant/appellant.

James R. Keller and C. Wayne Primm of Coburn, Croft & Putzell, St. Louis, for plaintiff/respondent.

Before LOWENSTEIN, P.J., and KENNEDY and GAITAN, JJ.

KENNEDY, Judge.

Arthur S. Kay had verdicts and judgment for $500,000 for a real estate sales commission plus $138,000 prejudgment interest against Francis B. "Chris" Freeman, Jr., Southwest Tracor, Inc., and Sheifa Corporation. All defendants appeal.

Plaintiff Arthur S. Kay, d/b/a Arthur S. Kay and Associates, was a real estate broker. In pursuance of an oral listing contract with Francis B. "Chris" Freeman, Jr., who was the president of Southwest Tracor, Inc., and of Sheifa Corporation, Kay—with the assistance of another broker, Paul Scheibe, who represented the buyer—procured a buyer for five motels belonging to the two corporations. The motels, called

"Belton Inns", were located respectively in Dayton, Dallas and Birmingham, with two in Des Moines. Two of the motels were owned by Sheifa Corporation and three of them belonged to Southwest Tracor, Inc. Freeman was the sole stockholder of Southwest Tracor, Inc., which was in turn the sole stockholder of Sheifa Corporation. Freeman was the president of both corporations.

The terms of the listing contract, which was entered into between Kay and Freeman in a telephone conversation on September 10, 1984, were that the seller was to receive $17.5 million net of the real estate commission. The motels would be priced at $18.5 million, which would allow the broker a commission of $1 million, or 5.045 percent of the sale price.

In due time Kay with Paul Scheibe's assistance gained the interest of Nevis Industries, Inc., in the purchase of the motels. A contract for purchase and sale of the five motels was entered into between Southwest Tracor and Sheifa as sellers and Nevis Industries as buyer, at a price of $18.5 million. The contract provided for the payment by the buyer of the $1 million brokers' commission as a part of the purchase price, but we shall defer a particular discussion of that until later in the opinion.

The sale was concluded. Kay's commission was not paid. Scheibe, who was to share in the commission equally with Kay, settled his commission claim and is not involved in this lawsuit. Kay brings this claim against Freeman and the two corporations for his share of the commission, $500,000. The trial resulted in the verdicts and judgment mentioned in the first paragraph of this opinion.

■ Individual defendant Freeman says he is not personally liable for the commission, and we agree. The judgment against Freeman as an individual is reversed. Kay and Freeman at the time of their September 10, 1984 conversation had known each other for some time and had had previous business associations. Kay had in fact represented Freeman in the purchase of one of the Des Moines motels. The name of neither corporation was mentioned in the Kay–Freeman conversation, but Kay knew the corporations by name and knew Freeman was president of each of them. Freeman was representing disclosed principals. "The presumption, in such cases, is, that it was the agent's intention to bind his principal and not to incur personal liability, and an agent will not be bound personally, except upon clear and explicit evidence of an intention to be bound." *Bridges v. Rice,* 99 S.W.2d 531, 534 (Mo.App.1936), *quoted in Wired Music, Inc. of the Great Midwest v. Great River Steamboat Co.,* 554 S.W.2d 466, 468 (Mo.App.1977). In a case similar to the present one, *Moseley & Co. v. Building Leasing Corp.,* 581 S.W.2d 399 (Mo. App.1979), the president of a corporation was held as a matter of law not to have incurred personal liability for a sales commission. "There was nothing in evidence," the court said, "which established mutuality of intention...." *Moseley,* 581 S.W.2d at 401.

We do not consider it substantial evidence of Freeman's intention to be personally bound that in his conversation with Kay he used the personal pronouns "I" and "me" to refer to the seller, for example, "I would like to sell all five of [the motels]" and "As long as I get what I want [$17.5 million] ... I want you to work for me". Kay in his turn referred to the seller as "you". This evidences no purpose on Freeman's part to be bound personally; one would expect the use of those terms in informal speech or writing, and they are not indicative of a purpose to assume personal liability. Missing is the "mutuality of intention" that the agent was to be personally obligated for his principal's indebtedness. *Moseley,* 581 S.W.2d at 401.

■ We turn next to the corporations' contention on appeal that they are not bound by Freeman's employment of Kay and his agreement to pay the commission. They say there was no proof that Freeman had actual or apparent authority to enter into the listing contract with Kay.

This contention of Southwest Tracor and Sheifa is unsound. Whatever actual or apparent authority may inhere in the office of a corporate president to employ a broker to

sell capital assets of a corporation, *see* Annot., *Authority of Corporate Officer to Employ Agent or Broker to Sell Property,* 159 A.L.R. 796 (1945), the plaintiff does not have to rely alone upon the existence on September 10 of Freeman's actual or apparent authority to enter into the listing contract on behalf of Southwest Tracor and Sheifa. Here the two corporations in their later contract to sell the five motels acknowledged their obligation for the payment of the commission, and sought to provide for the payment thereof by the assumption of the obligation by the buyer Nevis Industries, Inc. Putting aside the question of the authority of Freeman to enter into the listing contract on September 10, the corporations accepted Kay's services under the contract they seek to deny. Their liability is based upon principles of ratification and estoppel expressed as follows in Annot., 159 A.L.R. at 810:

> [W]here an officer of a corporation has entered into an unauthorized contract employing another to sell or aid in the sale of corporate property, and the benefit thereof has been accepted by the corporation, formally or informally, with actual or imputed knowledge upon the part of those who would have had the power to authorize such contract originally, recovery for the services may be had.

■ Southwest Tracor and Sheifa make yet another contention. They say that Southwest Tracor cannot be held for the commission on the two motels owned by Sheifa, and Sheifa cannot be held for the commission on the three motels owned by Southwest Tracor. The five motels, however, were dealt with throughout as a single lot. The two corporations were referred to in the contract as "seller" in the singular. The $18.5 million contract price was not distributed as between the motels nor between the corporations. In the sale contract, the seller, namely, the two corporations acknowledge their indebtedness for a broker's commission of $1,000,000. There were no words of severance in the contract. In this state of affairs, *Illinois Fuel Co. v. Mobile & O.R. Co.,* 319 Mo. 899, 8 S.W.2d 834 (1928), *cert. denied,* 278 U.S. 640, 49 S.Ct. 34, 73 L.Ed. 555 (1928), provides a complete answer to the appealing corporations' respective contentions. There two railroads contracted to buy a quantity of coal from the plaintiff for a stated amount of money. The coal all went to the Southern Railway Company, one of the purchasers, and suit was brought by plaintiff against the other purchaser, Mobile and Ohio Railroad Company, for the price of the coal under the contract. In affirming a judgment in favor of plaintiff, the court examined a number of authorities, all in agreement, and quoted the following with approval:

> Under the common law, where two or more persons undertake the performance of an obligation, the presumption is that the undertaking was joint. Words of express joinder are not necessary for this purpose. Words of severance are required to produce a several responsibility, and in the absence of such words the undertaking is joint and not several.

*Illinois Fuel,* 8 S.W.2d at 840 (citations omitted). Each of the selling corporations was liable for the entire commission as a joint obligor. It is characteristic of a joint obligation that each obligor is bound for the performance of the entire obligation. Section 431.110, RSMo 1986; *Thomas v. Schapeler,* 92 S.W.2d 982, 984–85 (Mo.App. 1936). (In the present case there was a verdict in favor of plaintiff Kay against each one of the defendants for $500,000 plus interest. The trial court entered judgment against the defendants "jointly and severally" for the single sum of $500,000 plus prejudgment interest. None of the parties has objected to this action of the trial court. Of course the plaintiff will be entitled to only one recovery.)

■ Appellants claim the court erred in excluding from evidence a certain letter addressed by Kay to Freeman, Freeman's attorney, Phillip A. Kusnetsky, and to three persons connected with the buyer. We hold, however, that the court was correct in excluding the letter on the ground that it was an offer in compromise. The letter was written while the contract for sale was pending and before the sale was closed. The commission had already be-

come embroiled in controversy. The contract of sale, dated November 30, 1984, had provided that the $1,000,000 commission was to be paid by the buyer "for seller". However, it provided that the commission was to be paid not in cash but in the form of 22.7 housing units in a New Mexico housing development, and that it was to be divided $250,000 to Kay, $250,000 to Paul Scheibe, and $500,000 to one Harvey Champlin. Champlin was a consultant to Nevis Industries, but he did not know why the contract provided for him to receive $500,000. He claimed no commission on the sale and expected to receive none. None of the defendants claims that Champlin had any claim to any part of the commission. Kay never assented to the contract provision for payment of the commission. In this state of affairs, he wrote the letter referred to above, under date of January 18, 1985. The letter in essence seemed to be adopting a tentative settlement agreement reached by his associate Paul Scheibe, with the buyer, Nevis Industries, by which Kay and Scheibe would accept from the buyer in payment of their commissions the New Mexico houses or at their option $162,000 each in cash. The letter elected on the part of the brokers to take $162,000 in cash. The proposed settlement was never concluded, however; the $162,000 was not paid in accordance with Kay's letter. Thomas Nevis answered Kay's January 18 letter by writing that Nevis Industries would pay the commission in accordance with the terms of the sale-purchase contract, and that no option of $162,000 in cash had ever been offered to Scheibe.

The January 18 letter was clearly an offer in compromise, and was inadmissible for the well-known reasons that offers in compromise are inadmissible. *McPherson Redevelopment Corp. v. Watkins*, 743 S.W.2d 509, 510–11 (Mo.App.1987); *J.A. Tobin Construction Co. v. State Highway Commission of Missouri*, 697 S.W.2d 183, 186–88 (Mo.App.1985). The court did not err in excluding it.

■ Shortly after the court had ruled that the January 18 letter was inadmissible as an offer in compromise, defendants' counsel, Mr. Thrower, in cross-examining plaintiff Kay, asked: "Isn't it true, Mr. Kay, that the cash commission that you told Mr. Freeman that you expected to be paid at the closing on February 18, 1985, was $162,000; isn't that correct?"

The trial court sustained plaintiff's objection to the question and added: "That subject was raised, and the court held that you could not introduce any evidence on that subject. You are reprimanded for misconduct. Proceed." The court then, at plaintiff's request, admonished the jury "to disregard any implication of the amount otherwise gotten from counsel's question."

Defendants contend that the court's rebuke to counsel in the presence of the jury was highly prejudicial to them. We do not consider the trial court's reprimand to have been intemperate, or to have shown any hostility toward defendants or their counsel, or to have indicated any partiality. The judge in his conduct of a trial is not in a strait-jacket and had a fairly wide latitude in dealing with what could fairly have been regarded by the court as an attempt by defendants' counsel to flout the trial court's ruling that the offer by Kay to accept $162,000 in cash in payment of his commission was an inadmissible offer in compromise. *Beesley v. Howe*, 478 S.W.2d 649, 651 (Mo.1972). We do not think the court's reprimand deprived defendants a fair trial.

Southwest Tracor and Sheifa complain about the verdict directing instructions' deviation from the appropriate MAI instruction. MAI 29.02 includes a finding that "the defendant's property was sold". Their complaint is that the modified instructions which were given authorized verdicts against each corporation for the whole $500,000 commission if it agreed that plaintiff should receive a commission on the sale price of the five Belton Inns if they were sold as a result of plaintiff's efforts, even though Southwest Tracor owned only three of the motels and Sheifa only two.

The corporations' contention is the same as that which we have dealt with earlier, namely, that neither corporation could be

held for the commission on all five of the motels when Southwest Tracor owned three of them and Sheifa two. We have held above that the undertaking of the two corporations to pay the commission was a joint undertaking, and either of them could be held for the payment of all. The instructions were therefore authorized under the evidence, and the deviation was not only not erroneous, it was necessary to present plaintiff's theory. *Means v. Sears, Roebuck & Co.*, 550 S.W.2d 780, 786 (Mo. banc 1977); *Cryts v. Ford Motor Co.*, 571 S.W.2d 683, 689 (Mo.App.1978); *Jurgeson v. Romine*, 442 S.W.2d 176, 178 (Mo.App. 1969).

The judgment is reversed as to Francis B. Freeman, Jr., and is affirmed as to the other defendants.

All concur.